1  Steven Tamer, Esq. SBN 159828
   TAMER LAW CORP.
2  15760 Ventura Blvd., Suite 700
   Encino, California 91436
3  (818) 784-1400
   Attorney for Plaintiffs
4  OPHIE BELTRAN and TODD BERTRANG

5

6  **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**
7

8  | TODD BERTRANG; OPHIE BELTRAN | Case No.: |
   |---|---|
   | Plaintiffs, | |
   | vs. | Hon. |
   | IVORY HOLDINGS, LLC, a limited liability company; LIDO SAILING CLUB, LLC, a limited liability company, and DOES 1 through 10, inclusive, | **COMPLAINT FOR:** |
   | | 1. **VIOLATION OF RCRA §7002, 42 U.S.C. § 6901 et. seq.** |
   | | 2. **NEGLIGENCE – PREMISE LIABILITY** |
   | Defendants. | 3. **STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY** |
   | | 4. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** |
   | | 5. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
   | | **DEMAND FOR JURY TRIAL** |
   | | File Date: |
   | | Trial Date Set: No Date Set |

- 1 -
COMPLAINT

Plaintiffs OPHIE BELTRAN and TODD BERTRANG an individual dba HUNTINGTON HARLEYS (collectively "Plaintiffs") by and through their counsel, complain against defendants IVORY HOLDINGS, LLC., LIDO SAILING CLUB, LLC., and DOES 1-10, inclusive (collectively "Defendants") as follows:

**THE PARTIES**

1. Plaintiff OPHIE BELTRAN is an individual, and at all relevant times, resides in the County of Los Angeles. OPHIE BELTRAN is a vendor that does packaging for TODD BERTRANG, at the Premises and has been a vendor for TODD BERTRANG since 2014.

2. Plaintiff TODD BERTRANG, dba HUNTINGTON HARLEYS, is an individual, and at all relevant times, resides and does business in the County of Los Angeles.

3. Defendant IVORY HOLDINGS, LLC., ("IHL") at all relevant times, is a California limited liability company, doing business in the County of Los Angeles, California. IHL is the owner of the Premises which is located in Los Angeles, County.

4. Defendant LIDO SAILING CLUB, LLC., ("LSC") at all relevant times, is a limited liability company of unknown origin, doing business in the County of Los Angeles.

5. Plaintiffs are presently unaware of the true names and/or capacities of defendants DOES 1 through 10, and therefore sue them by such fictitious names. Plaintiffs are informed and believe, and upon such information and belief allege, that defendants Does 1 through 10, inclusive, are responsible in some manner for the acts and/or omissions to act alleged in this complaint. Plaintiffs will seek leave of court to amend this complaint as the true names and capacities of defendants Does 1 through 10, inclusive, are ascertained. These fictitiously-named defendants are sued in their personal and official capacities.

6. Plaintiffs are informed and believe, and upon such information and belief allege, that each named and fictitiously-named defendant was the principal and/or agent and/or partner and/or alter ego and/or employee and/or employer and/or joint venturer of each of the other named and fictitiously-named defendants and is in some manner legally liable for the conduct at issue in this complaint. Plaintiffs are also informed and believe, and upon such further information and belief allege, that each named and fictitiously-named defendant was at all material times acting within the

scope of one or more of such relationships and with the express and/or implied knowledge, direction, approval, and/or ratification of each of the other named or fictitiously-named defendants.

**JURISDICTION AND VENUE**

7. Plaintiffs assert that they are entitled to relief under the Resource Conservation and Recovery Act of 1976 § 7002(a)(1)(B), 42 U.S.C. § 6901 et. seq. which governs the prohibition of land disposal of hazardous waste. Plaintiffs invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331.

8. Plaintiffs bring this case in the United States District Court for the Central District of California, Western Division, under 28 U.S.C. § 1391, as it is the judicial district in which a substantial part of the events occurred.

**GENERAL ALLEGATIONS**

9. On or about May 21, 2014, plaintiff TODD BERTRANG, an individual dba HUNTINGTON HARLEYS, entered into a sublease agreement with defendants IHL an Oklahoma limited liability company and LSC a limited liability company of unknown origin, regarding the premises commonly known as 1233 W. 255th St., Harbor City, CA 90710 ("Premises")

10. On or about August 1, 2016 TODD BERTRANG signed a further lease, regarding the premises, with IHL only.  Said lease extended until August 2019. On or about August 2019 Todd signed a further lease, regarding the Premises, with IHL for an additional period of six months.

11. IHL owns the premises.

12. Autocats, Inc. ("Autocats") is a previous tenant of the Premises.  On information and belief plaintiff alleges that Autocats is a corporation of unknown origin that did business at the Premises starting on or about 2007. Autocats is a business that recycles motor vehicle parts and metals. During the times that Autocats was doing business at the Premises, dangerous chemicals were deposited at the Premises, such as Chromic Acid and Spent Catalyst.

13. ELV Recycling, Inc. ("ELV") is a previous tenant of the Premises.  On information and belief, Plaintiffs allege that ELV is a Delaware Corporation that did business at the Premises starting on or about 2011. ELV is a business that recycles motor vehicle parts and metals.  During the times that EVL was doing business at the Premises, dangerous chemicals were deposited at the

Premises, such as Chromic Acid and Spent Catalyst.

14. When Plaintiffs entered the premises, on or about May 2014, Plaintiffs were not made aware of the dangerous chemicals that had been deposited at the premises. This caused Plaintiffs to unknowingly be exposed to chemicals such as Chromic Acid and Spent Catalyst.

15. On or about late August 2019, Plaintiffs discovered that they had been exposed to the dangerous chemicals.

**FIRST CLAIM FOR RELIEF**
**Resource Conservation and Recovery Act 1976 § 7002(a)(1)(B), 42 U.S.C. § 6901 et. seq.**
**(By Plaintiffs against all Defendants and DOES 1-10)**

16. Plaintiffs incorporate each and every allegation set forth above as though fully set forth herein.

17. Plaintiffs bring this civil suit for injunctive and declaratory relief, and civil penalties before this Court, in the first instance, as permitted by the Resource Conservation and Recovery Act ("RCRA") § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), which permits suits "against any person. . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

18. This Court has jurisdiction to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both, or . . . to apply any appropriate civil penalties under section 6928(a) and (g) of this title. 42 U.S.C. § 6972.

19. Defendants are in violation of RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) by virtue of their contribution to the handling, storage, treatment, transportation, and/or disposal of hazardous waste such as Chromic Acid and Spent Catalyst at the Premises – a previous motor vehicle parts and metal recycling plant - which presents "imminent and substantial endangerment" to Plaintiffs and the environment.

20. Plaintiffs are informed and believe, and upon such information and belief allege that

Defendants knew, or should have known, of the presence of hazardous waste at the Premises since at least 2014. Plaintiffs have been exposed to the harmful chemicals since on or about 2014 and Defendants either deliberately or negligently fail to remedy the issue.

21. Defendants are liable for the storage of hazardous waste as they have not acted in a manner so as to dispose of such hazardous waste that is present on the premises. 42 U.S.C. §6903(33). "Storage" is further defined in the regulations as "the holding of hazardous waste for a temporary period, at the end of which the hazardous waste is treated, disposed of, or stored elsewhere." 40 C.F.R. § 260.10 (1992).

22. Further, Defendants are liable in their "treatment" of the hazardous waste because they have not taken measures to render the waste "nonhazardous". The term "treatment", when used in connection with hazardous waste, means ". . . any method, technique, or process, including neutralization, designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous . . ." 42 U.S.C. §6903(34).

23. Generally, there is a 90-day notice requirement before a plaintiff can bring an action under RCRA §7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B). However, for "actions . . . respecting a violation of subchapter III of this chapter" which governs "hazardous waste management" including its treatment, storage and disposal, a citizen suit may be filed immediately after providing notice. 42 U.S.C. § 6972(b)(2)(A); see also *Hallstrom v. Tillamook County*, 493 U. S. 20, 26-27 (1989).

24. Plaintiffs have complied with the notice requirement by providing the requisite notice before bringing this suit.

25. Plaintiffs are informed and believe, and upon such information and belief allege that this is an action "respecting a violation of subchapter III of this chapter" because Chromic Acid and Spent Catalyst are composed of chemicals listed as hazardous waste under the subchapter. Subchapter III, § 6924(d) prohibits the land disposal of liquid hazardous wastes referred to in paragraph.

26. Plaintiffs are informed and believe, and upon such information and belief allege that liquid hazardous waste from Chromic Acid and Spent Catalyst is present on the Premises in concentrations greater than or equal to those specified in Subchapter III.

27. Chromium (VI and/or compounds (as Cr VI)) 500 mg/l is listed as a hazardous waste under Subchapter III. 42 U.S.C. 6924(d)(2)(B)(iii). According to the Material Safety Data Sheet (Exhibit A), Chromic Acid is listed as a chemical present at the Premises; Chromic Acid is synonymous with Chromium (VI) oxide; Chromic anhydride; Chromium (VI) oxide.

28. Arsenic and/or compounds (as As) 500 mg/l is listed as a hazardous waste under Subchapter III. 42 U.S.C. 6924(d)(2)(B)(i). According to the Safety Data Sheet supplied by Valero (Exhibit B), the composition of Spent Catalyst, contains arsenic.

29. Nickel and/or compounds (as Ni) 134 mg/l is listed as a hazardous waste under Subchapter III. 42 U.S.C. 6924(d)(2)(B)(vi). According to the Safety Data Sheet supplied by Valero (Exhibit B), the composition of Spent Catalyst, contains nickel.

30. Cadium and/or compounds (as Cd) 100 mg/l is listed as a hazardous waste under Subchapter III. 42 U.S.C. 6924(d)(2)(B)(ii). According to the Safety Data Sheet supplied by Valero (Exhibit B), the composition of Spent Catalyst, contains nickel.

## SECOND CLAIM FOR RELIEF

**(Negligence – Premise Liability Against All Defendants and DOES 1-10)**

31. Plaintiffs incorporate each and every allegation set forth above as though fully set forth herein.

32. Plaintiffs allege that Defendants and DOES 1-10 were negligent in the use and/or maintenance of the property as alleged herein.

33. Defendant's either own and/or control the Premises. As such, Defendants are under a duty to exercise reasonable care to make sure that the Premises is maintained in a safe and usable condition free of any risks and dangers, and inspect for and warn against such risks and dangers.

34. Defendants breached this duty of care by failing to inspect the Premises and take reasonable precautions to ensure that it was free of hazardous waste.

35. Based on information and belief, Defendants knew or should have known that hazardous waste was present on the Premises because previous tenants (Autocats and EVL) operated a motor vehicle parts and metal recycling plant. Through reasonable care Defendants should have known of associated hazardous waste with such type of recycling.

36. As a direct and proximate result of Defendant's breach, Plaintiffs have suffered harm: since on or about 2014, they have been exposed to harmful chemicals such as Chromic Acid and Spent Catalyst. The adverse effects of exposure to Chromic Acid range from (by no means is this list exhaustive) burns, irreversible eye injury, liver and kidney damage, gastrointestinal tract tumors and lung cancer; it is a Confirmed Human Carcinogen. The adverse effects from exposure to Spent Catalyst range from (by no means is this list exhaustive) toxic if inhaled or swallowed, severe skin burns and eye damage, to prolonged exposure causing damage or organs, specifically the lungs and respiratory system. (Exhibit A).

37. Additionally, as a further direct and proximate result of Defendants' negligence, Plaintiffs have suffered harm in that operating their full-time business all of these years on a property contaminated with Chromic Acid and Spent Catalyst has engendered fear regarding the serious health consequences from exposure to same.

38. Defendants' negligence was a substantial factor in causing the foregoing harm.

### THIRD CLAIM FOR RELIEF

**(Strict Liability for Ultrahazardous Activity – Against All Defendants and DOES 1-10)**

39. Plaintiffs incorporate each and every allegation set forth above as though fully set forth herein.

40. Plaintiffs allege that Defendants were engaged in ultrahazardous activity by contributing to the past or present handling, storage, treatment and disposal of solid and hazardous waste.

41. Plaintiffs were harmed in that they have been exposed to hazardous chemicals known to cause severe adverse health problems (discussed above).

42. Plaintiffs' harm was the kind of harm that would be anticipated as a result of the risk created by exposure to hazardous waste such as that present on the Premises.

43. Defendant's past or present handling, storage, treatment and disposal of solid and hazardous waste was a substantial factor in causing Plaintiffs' harm because Defendants have been leasing the Premises to Defendant Todd Bertrang since 2014 and have failed act to render the waste nonhazardous.

## FOURTH CLAIM FOR RELIEF

**(Negligent Infliction of Emotional Distress – Against All Defendants and DOES 1-10)**

44. Plaintiffs incorporate each and every allegation set forth above as though fully set forth herein.

45. Defendants acted negligently as detailed above.

46. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer severe emotional distress.

47. Defendants' conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

48. Defendants conduct was malicious, oppressive and fraudulent warranting punitive damages.

## FIFTH CLAIM FOR RELIEF

**(Intentional Infliction of Emotional Distress – Against All Defendants and DOES 1-10)**

49. Plaintiffs incorporate each and every allegation set forth above as though fully set forth herein.

50. Defendant's conduct was extreme and outrageous. Defendants were armed with the knowledge or constructive knowledge that the Premises they are leasing used to be operated as a motor vehicle parts and metals recycling plant; the processes produce hazardous chemicals known to cause severe adverse health implications.

51. Defendants intentionally failed to make the Premises safe for the Plaintiffs and the environment.

52. Defendants intentionally caused Plaintiffs emotional distress.

53. Plaintiffs have suffered severe emotional distress.

54. Defendants' conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against all Defendants and DOES 1-10 as follows:

1. For injunctive and declaratory relief.
2. For costs of litigation including reasonable attorney and expert witness fees.
3. For general and special damages according to proof.
4. For compensatory damages according to proof.
5. For punitive and exemplary damages according to proof.
6. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

1. Plaintiff demands a trial by jury on all claims for damages. Plaintiff does not seek a jury trial for claims sounding in equity.

DATED: November 12, 2020

Respectfully submitted,

By: _____

Steven Tamer, Esq.

Attorney for Plaintiffs